OPINION OF THE COURT
Joan S. Kohout, J.
A petition was filed on July 17, 1998 by the Monroe County Child Support Enforcement Unit, on behalf of Judith S., a resident of the State of Virginia, requesting that the respondent John M. “be found in contempt of court and that he be committed to jail for a term not to exceed six (6) month [s]” based upon his willful violation of a child support order previously made in the State of Florida. Additionally, Ms. S. requested a judgment for arrears in the amount of $9,251.73, an undertaking and counsel fees.
The petition was filed pursuant to the Uniform Interstate Family Support Act (hereinafter referred to as UIFSA), Family Court Act article 5-B,[1] which became effective in New York State on December 31, 1997. The petition alleges a violation of a Florida child support order that was registered in New York State directing Mr. M. to pay $531.67 per month for his daughter Marissa.
Personal jurisdiction was obtained over the respondent, who personally appeared before a Hearing Examiner. Counsel was assigned for Mr. M. and counsel for the Monroe County Child Support Enforcement Unit appeared for Ms. S. A hearing occurred on January 21, 1999 at which time the Hearing Examiner’s finding notes that “[t]he arrears violation petition filed by Ms. [S.] is sustained. A wilful violation is stipulated.” The arrears were “established” at $12,376.25 and judgment *470 was granted for that amount.[2] The Hearing Examiner then transferred the case to this court “pursuant to Family Court Act Sections 439, 454, 455.”[3]
When the case came on before this court, petitioner’s counsel indicated that Ms. S. was requesting incarceration. A motion was filed by Ms. S. requesting permission to testify by telephone, which was opposed by respondent. Mr. M. also filed motions, requesting that the petition be dismissed on the grounds that the Monroe County Child Support Enforcement Unit is not a proper party to commence this action and UIFSA does not authorize incarceration.
Standing of Monroe County Child Support Enforcement Unit to Commence Action
The petition in this case was signed and filed by Christian F. Dudley as a representative of the Monroe County Child Support Enforcement Unit. There is no copy of the court order from Florida attached to the petition and no document signed by Ms. S. verifying that the information alleged in the papers is accurate.
UIFSA does not direct the form or content for a petition in this proceeding. Indeed, UIFSA fails to provide a clear blueprint for the handling of interstate cases. (See, Sobie, Practice Commentaries, McKinney’s Cons Laws of NY, Book 29A, Family Ct Act art 5-B, at 205-206 [1999 ed].) Family Court Act §§ 580-304 and 580-305 permit a non-New York resident or agency to initiate a petition in his home State for transmittal to New York (or any other State where the other party resides). Alternatively, a petition may be filed directly in “another state which has or can obtain personal jurisdiction over the respondent.” (Family Ct Act § 580-301 [c]; see also, Family Ct Act § 580-305 [a].) The petitioner in this case elected to proceed with the second alternative and filed her petition directly with the New York State Family Court in the county where the respondent resides.
The issue presented here is whether the Monroe County Child Support Enforcement Unit was legally authorized to commence this proceeding since it is not an “obligee” in this case as defined under Family Court Act § 580-101 (12). The *471 statute includes within the definition of obligee an individual who has received a support order, as well as a State or “political subdivision” that has received an assignment of support rights or has “independent claims based on financial assistance” (Family Ct Act § 580-101 [12] [ii]). Under this definition, Ms. S. is an obligee but the Monroe County Child Support Enforcement Unit is not.
UIFSA does not, however, require the obligee to personally sign and file a petition seeking enforcement of an out-of-State order registered in New York. Nor does UIFSA establish requirements for the contents of the petition or a procedure for its filing. New York is required to assist petitioners upon request through a support enforcement unit. (Family Ct Act § 580-307.) Since UIFSA does not state whether a support enforcement unit may sign the petition in a case such as this, we must look to New York State law to resolve this procedural question. (Family Ct Act § 580-303 [1].)
Petitioner has fashioned her enforcement action as a violation petition.[4] Consequently, Family Court Act § 453 (a) applies concerning origination of violation petitions. The statute permits a support collection unit, among others, to originate a violation action. In light of the silence in UIFSA on this issue, the court finds that New York law applies and that a support collection unit may originate this violation action.
Incarceration under UIFSA
The petition in this case is entitled “PETITION Violation of Support Order (UIFSA).” The petition itself alleges only that the respondent “has failed to obey the order” (para 5). Included in the demand for relief at the conclusion of the petition is a request for a finding that the respondent “is in willful violation of this order,” and for a commitment to jail for up to six months.
UIFSA does not specifically include “violation” petitions in its list of actions under “civil provisions of general application” (Family Ct Act part 3; see, Family Ct Act § 580-301). Enforcement of orders after registration is specifically covered by part 6 of the Act. (Family Ct Act § 580-301 [b] [3]; see also, Family Ct Act § 580-603 [b].)
The order in this case has been registered and is, therefore, subject to enforcement under New York laws “in the same *472 manner and * * * subject to the same procedures as an order issued” in New York. (Family Ct Act § 580-603 [b].) Unfortunately, the term “enforcement” is not defined. There is no mention of violation petitions or of contempt, as means of enforcement or otherwise. The only mention of contempt is contained in Family Court Act § 580-305 (b) (5), which permits a responding tribunal “to the extent otherwise authorized by law” to “enforce orders by civil or criminal contempt, or both.”
Since New York procedural and substantive law governs in this case (Family Ct Act § 580-303 [1]), a review of New York law regarding civil and criminal contempt is required. There is no provision in New York’s Family Court Act for contempt, as such. Family Court Act § 156 permits actions to be brought under the Judiciary Law for civil and criminal contempt, but only in cases where the Family Court Act fails to provide a specific remedy. Both criminal and civil contempt have well-defined due process and procedural requirements under the Judiciary Law and case law.[5] Since the Family Court Act contains remedies for violations of child support orders in Family Court Act § 454 et seq., neither civil nor criminal contempt is available in Family Court as an enforcement tool in those cases.
As a result, neither civil nor criminal contempt is available in this UIFSA case. (See, Family Ct Act § 580-303 [1].)
The question remains, however, whether incarceration under Family Court Act §§ 454 and 455 is allowable if the statutory requirements of a willful violation of a child support order are proved. A review of the UIFSA statutory scheme leads the court to answer this question in the negative.
To the extent that UIFSA contains procedural provisions, they appear inconsistent with the heightened due process requirements associated with incarceration for violations of civil orders. (See, n 5, supra.) A petitioner must prove the violation by clear and convincing competent proof. (Matter of Edwards v Johnson, 233 AD2d 884 [4th Dept 1996].) The respon *473 dent must be afforded a full opportunity to be heard, including an evidentiary hearing. (Matter of De Bottis v Gates, 247 AD2d 844 [4th Dept 1998].) Additionally, he is entitled to assignment of counsel. (Family Ct Act § 262.)
In contrast, the focus of UIFSA is on providing out-of-State petitioners with a simplified procedure to present their case. Consistent with this purpose are procedures promoting easy transfer of information between the States, including use of telephonic testimony (Family Ct Act § 580-316 [f]), allowance for documents to be faxed to the court without any requirement of accuracy verification (Family Ct Act § 580-316 [e]) and presentation of verified petitions as proof at the trial (Family Ct Act § 580-316 [b]). None of these procedures are available in non-UIFSA support proceedings in New York and all present difficulties in assuring the respondent’s right to confrontation, resolution of credibility of witnesses and reliability of documentation.[6] Credibility issues often become particularly important when, as here, clear and convincing proof is required. (See, Sobie, Practice Commentaries, McKinney’s Cons Laws of NY, Book 29A, Family Ct Act § 580-316, at 256 [1999 ed].)
Additionally, the court notes that even if incarceration were available in New York in this UIFSA case, the petition here is insufficient on its face to make out a violation cause of action for incarceration under Family Court Act § 453, since it fails to include any allegation that the respondent willfully failed to obey an order of support. (See, Family Ct Act § 454.) Where incarceration is requested, a heightened level of due process is required, including specific pleading of all necessary elements of the cause of action.[7] (See, e.g., Commissioner of Social Servs. of Chemung County v Pronti, 227 AD2d 705 [3d Dept 1996].)
As a result, the petition must be dismissed to the extent that it requests incarceration. The previous stipulation and judgment are not affected by this decision and shall continue.
Since the motion to dismiss the incarceration request has *474 been granted, the court need not reach the question of whether telephonic testimony would be proper in a child support case requesting incarceration.

. UIFSA is a Federally mandated act with a required effective date of January 1, 1998. (See, 42 USC § 666 [f].) One of its aims is to facilitate the enforcement of interstate child support orders. (Governor’s Mem approving L 1997, ch 398,1997 McKinney’s Session Laws of NY, at 1939.) UIFSA replaced the Uniform Support of Dependents Law (USDL) previously contained in Domestic Relations Law article 3-A.

. It appears that Ms. S. withdrew her request for an undertaking or counsel fees by stipulating to the entry of a judgment. She did not, however, withdraw her request for incarceration.

. Under New York law a Hearing Examiner is not permitted to incarcerate a party. (See, Family Ct Act § 439.)

. As is discussed below in this decision, New York violation petitions seeking incarceration are not covered by UIFSA. However, to the extent that petitioner sought enforcement through other devices, such as a judgment, New York’s violation remedies contained in Family Court Act § 454 appear to be allowable under UIFSA. (Family Ct Act § 580-301.)

. Judiciary Law § 750 (A) (3) includes “[wfilful disobedience” of a lawful mandate within the definition of criminal contempt and provides sanctions of a fine up to $1,000 and 30 days in jail. (Judiciary Law § 751 [1].) Criminal contempt must be proved beyond a reasonable doubt. (Gompers v Buck’s Stove & Range Co., 221 US 418 [1911].) Civil contempt is governed by Judiciary Law § 753 and is subject to the procedural requirements contained in Judiciary Law § 756. It is punishable by incarceration of up to six months and/or a fine, and may be subject to periodic court review. (Judiciary Law §§ 773, 774.) The burden of proof is clear and convincing evidence. (Matter of McCormick v Axelrod, 59 NY2d 574 [1983].)

. It is this court’s experience that the enormous burden of keeping track of millions of child support payment accounts results in numerous errors by child support enforcement units in New York State. The difficulties in obtaining accurate information from other States is even more daunting, especially when the relief requested is incarceration.

. The court need not reach here whether due process demands that the individual seeking incarceration.execute the pleading, or at least attach a sworn statement as to the facts. However, it would seem to be good practice to have such a firsthand statement included.